IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANISHA P. PRICE,<br><br>        Plaintiff,<br><br>v.<br><br>WASTE MANAGEMENT, INC.,<br><br>        Defendant. | Case No. 1:13-cv-02535-ELH |

**REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Waste Management, Inc. ("WMI"), by and through undersigned counsel, respectfully submits this reply in further support of its motion, pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint of plaintiff Janisha Price ("Plaintiff") in its entirety for lack of subject matter and personal jurisdiction.  This memorandum is also submitted in response to Plaintiff's request for leave to amend the Complaint "in order to make a more detailed factual allegation as to the responsibility of Waste Management of Maryland's debts and limitations" and to "request and obtain the doctrine of successor liability."  *See* Plaintiff's Opposition ("Pl. Opp."), filed December 11, 2013 at p. 2 (Dkt. No. 10).  As explained more fully below, Plaintiff's opposition fails to contest, with any proof or argument, the grounds on which WMI has moved to dismiss the Complaint.  Accordingly, WMI's motion to dismiss should be granted and Plaintiff's Complaint should be dismissed with prejudice.

I.  **PLAINTIFF HAS NOT ESTABLISHED THAT THE COURT HAS SUBJECT MATTER JURISDICTION OVER HER TITLE VII CLAIM**

In her opposition, Plaintiff fails to point to any evidence that she has sued her "employer" – an express jurisdictional requirement according to the clear and unambiguous language of Title VII.  *See* 42 U.S.C. § 2000e-2(a) ("It shall be an unlawful employment practice for an *employer* ...") (emphasis added).  Rather, Plaintiff makes a conclusory assertion regarding who was her employer by referencing the Waste Management logo.  Pl. Opp., at p. 2.  Solely on that basis, Plaintiff insists this Court has subject matter jurisdiction over her Title VII claims.  *Id*.  Unfortunately, the "evidence" she offers (most of which is irrelevant) does not, and cannot, obscure the critical facts she does *not* dispute.

- WMI is a publicly traded company incorporated under the laws of the state of Delaware with its principal place of business in Houston, Texas;

- WMI is a holding company and is the indirect shareholder and ultimate parent company of Waste Management of Maryland, Inc. (WM-MD), a subsidiary incorporated under the laws of the State of Maryland;

- WM-MD is a separate, independent corporation, with its own management structure;

- WMI has no employees, and there is no transfer or interchange of personnel between WMI and WM-MD; and

- WMI corporate officers have no involvement in the human resources function at WM-MD including, but not limited to, hiring, firing, administering work schedules, work assignments, or supervising the day-to-day work activities of WM-MD employees.

*See* Declaration of Linda J. Smith ("Smith Decl."), dated November 25, 2013 at *passim* (Dkt. No. 7-2).

Ignoring these indisputable facts, Plaintiff instead relies on bald unsupported allegations for her assertion that WMI employed her:

- WMI has representative "Leaders", which are prominently marketed as representatives of WMI;

2.

- WMI's website, which displays the WMI emblem, copyright signature and parent company name – "Waste Management, Inc." – recognizes and lists the Senior VP of Human Resources among its "Leaders";

- Jay Romans, former Senior Vice President of Human Resources was among the decision makers for Plaintiff's application for the position of Vice President of Human Resources, Eastern Group; and

- WMI Leaders are accountable for the decisions they make for Waste Management Subsidiaries [sic], including affiliates in the state of Maryland.

For each purported fact presented to try and persuade the Court that WMI was her employer, Plaintiff cites nothing by way of supporting evidence, or cites promotional material which proves absolutely nothing other than the use of a common trade name or service mark – a fact not indicative of joint or single employer status.[1]  Plaintiff simply cannot rebut the strong persuasive evidence WMI has offered in support of its motion clearly establishing that WMI was not her employer.

    A.    **WMI DOES NOT EMPLOY FIFTEEN OR MORE EMPLOYEES**

As a preliminary matter, there is no evidence that WMI has the requisite number of employees.  *See* 42 U.S.C. § 2000e(b) (Title VII only covers employers with "fifteen or more employees").  According to Linda J. Smith ("Smith"), WMI's Corporate Secretary, WMI "is a holding company" with "no employees".  Smith Decl., at ¶¶ 4, 10.  Plaintiff does not dispute WMI's assertion and, in fact, concedes this point.  *See* Pl. Opp., at p. 1.  Instead, Plaintiff implicitly argues that WMI is a covered employer because it has "representative 'Leaders'".  *Id*.  In support of this proposition, Plaintiff directs the Court's attention to WMI's website, which contains a listing of WMI's *twelve* (12) members of leadership.  *See* Pl. Opp, at Ex. "A" (Dkt No. 10-1).  Therefore, even accepting Plaintiff's argument that WMI employs Leadership, she has still failed to establish that WMI employed fifteen or more employees.  *See, e.g., EEOC v.*

---

[1]    *See infra* at Point I.B.1.

*NCL America, Inc.*, 2008 U.S. Dist. LEXIS 7811, at *22 (D. Haw. Jan. 31, 2008) (finding that NCL Corp. – a holding company – did not qualify as an employer under Title VII because "there is no evidence of fifteen NCL Corp. officers, and there is no reference to any nonofficer employee."). Accordingly, WMI cannot be sued under Title VII.

> B. **PLAINTIFF HAS SIMPLY OFFERED NOTHING TO SUGGEST THAT THE RELATIONSHIP BETWEEN WMI AND WM-MD IS ANYTHING MORE THAN A NORMAL PARENT-SUBSIDIARY RELATIONSHIP**

Even if Plaintiff could prove that WMI has the requisite number of employees, Plaintiff would still fail to rebut the presumption that WM-MD, not WMI, was her employer. Pursuant to the doctrine of limited liability, a parent company is the employer of a subsidiary's personnel only if it controls the subsidiary's employment decisions or so completely dominates the subsidiary that the two corporations are the same entity. Thus, when a subsidiary hires employees, there is a strong presumption that the subsidiary, not the parent company, is the employer. *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980-81 (4th Cir. 1987). A plaintiff, must, therefore, prove that the relationship between the parent and its subsidiary is "[some]thing more than a normal parent-subsidiary relationship," in order for claims against the parent corporation to proceed past the motion to dismiss stage. *Betof v. Suburban Hosp., Inc.*, 2012 U.S. Dist. LEXIS 90794, at *14 (D. Md. June 29, 2012) (quoting *Johnson*, 814 F.2d at 981). Here, there is not a single factual allegation showing that the required excessive control exists between WMI and WM-MD such that both are a single entity.

> 1. **The shared service mark "WM" or "Waste Management" Proves Nothing**

In her opposition, Plaintiff argues that "[t]here is no distinction to the public via signage or policy between Waste Management of Maryland and Waste Management, Inc." Pl. Opp., at p. 2. It is with this "evidence" that Plaintiff is, presumably, attempting to show that WMI and

4.

WM-MD are one in the same. The use of such service marks or trade names within an affiliated group of corporations, however, is common; it does not prove joint or single employer status as a matter of law. *See, e.g., Von Grabe v. Sprint PCS*, 213 F. Supp.2d 1285, 1301 (S.D. Cal. 2003) (stating use of common trade names insufficient to establish jurisdiction over parent corporation); *Maddock v. KB Homes, Inc.*, 248 F.R.D. 229, 247 n.7 (C.D. Cal. 2007) (rejecting argument that employment status with parent company shown by subsidiary employer's use of common trade name). Moreover, to the extent Plaintiff is arguing WMI develops employment-related policies for its subsidiaries; this too, is not dispositive. *See, e.g.*, *Allen v. CVS Pharmacy, Inc.*, 2013 U.S. Dist. LEXIS 104065, at *15 (S.D. Tex. Jul. 25, 2013) (finding that the holding company's creation of "various personnel-related documents for use by the various subsidiary companies under the CVS Caremark umbrella to promote uniformity and efficiency" was insufficient to establish that CVS Caremark – a holding company with no employees – shared labor relations with its subsidiaries or was otherwise involved in employment decisions by its subsidiaries."); *Torres v. Liberto Mfg. Co., Inc.*, 2002 U.S. Dist. LEXIS 14694, at *15 (N.D. Tex. Aug. 30, 2002), *aff'd*, 2003 U.S. App. LEXIS 10531 (5th Cir. 2003) ("The fact that Liberto Speciality may have created a single employee handbook to be utilized by each of its subsidiaries does not evince that kind of extreme control by a parent corporation over the operations of its subsidiaries so as to render it and its subsidiary a single employer."). Accordingly, Plaintiff's subjective interpretation and/or mistaken assumptions, without more, are insufficient to establish that WMI was her employer.[2]

    **2.**    **WMI Does Not Control WM-MD's Employment Decisions**

A parent company can be an "employer" for Title VII purposes if, in relevant part, the

---

[2] In fact, even if the public was confused regarding the relationship between WMI and WM-MD, Plaintiff should not be. Her offer letter clearly stated that she was offered a position with "Waste Management of Maryland." Declaration of Robert Kviklys ("Kviklys Decl."), dated January 7, 2014, at ¶ 3, Ex. "A".

parent "controls the employment practices and decisions of the subsidiary." *Taylor v. Delmarva Power & Light Co.*, 2011 U.S. Dist. LEXIS 22918, at *5 (D. Md. Mar. 7, 2011) (quoting *Johnson*, 814 F.2d at 978). As the Fourth Circuit explained in *Johnson*, the types of facts relevant to this inquiry are whether the parent "hired and fired subsidiary employees, routinely shifted them between the two companies, and supervised their daily operations. 814 F.2d at 981. The exercise of some control, however, does not eliminate the protection of a parent company's limited liability. *Id.* at 980. In its moving papers, WMI argued that it has no involvement in the hiring or firing of WM-MD employees, it did not direct the work responsibilities and Plaintiff's other day-to-day activities, nor does it have any involvement in such matters that implicate the day-to-day management of the employment relationship. *See* Memorandum of Law in Support of WMI's Motion to Dismiss ("WMI Memo."), at p. 9 (Dkt. No. 7-1). Moreover, WMI avers that no representative of WMI made any employment decisions affecting Plaintiff. Kviklys Decl., at ¶ 3.

Plaintiff attempts to discredit the averments of WMI's Corporate Secretary, by alleging that "Jay Romans, former Senior VP of Human Resources was among the decision makers for my application for promotion into the VP of Human Resources, Eastern Group role." Pl. Opp., at p. 2. In support of this claim, Plaintiff refers the Court to two e-mails which purportedly "show the direct involvement Jay Romans, Senior VP of Human Resources had in determining my employment decisions." *Id*. These e-mails, at best, show that Plaintiff met with Jay Romans, among several other individuals, concerning a "potential new job." Pl. Opp., at Exs. "C" and "D" (Dkt. No. 10-3 and 10-4). Plaintiff's "evidence", which consists of two e-mails relating to a meeting Jay Romans had with Plaintiff, fails to overcome the "strong presumption" of limited liability. *See, e.g., Taylor*, 2012 U.S. Dist. LEXIS at *8 ("There are no facts plausibly

suggesting that Pepco exercised control over Delmarva's daily employment operations.  At best, Taylor's facts are scattered data points suggesting Pepco's either occasional, limited control over employment decisions ... or its oversight over employment decisions.").  In any event, Jay Romans was not an employee of WMI; rather, he was employed by Waste Management Corporate Services, Inc.  *See* Kviklys Decl., at ¶ 6.

In a last ditch effort to refute WMI's contention that Plaintiff was employed by WM-MD, and not WMI, Plaintiff makes the blanket statement that she was hired by WMI.  Pl. Opp., at p. 2.  It is well-settled, however, that a plaintiff's belief that she was employed by the putative employer is "of low or no probative value".  *Thomas v. BET Sound-Stage Restaurant/Brettco, Inc.*, 61 F.Supp.2d 448, 456 (D. Md. 1999).  Here, the undisputed facts establish that Plaintiff was employed by WM-MD and that WMI made no decision affecting her employment.  Kviklys Decl., at ¶¶ 3, 5.

### 3. WMI Does Not Dominate WM-MD's Operations

In its moving papers, WMI argued that it "does not dominate WM-MD's operations to such an extent that WMI and WM-MD are one entity and thus one employer."  WMI Memo., at p. 10.  For this analysis, the Fourth Circuit looks to whether a subsidiary is "highly integrated with the parent's business operations."  *Johnson*, 814 F.2d at 982.  Courts look to whether the parent commingled funds and/or assets with the subsidiary, uses the same work force or business offices as the subsidiary, and keeps the subsidiary undercapitalized.  *Id*.  Here, the record shows that WMI did not excessively interfere with the business operations of WM-MD.  In fact, WMI and WM-MD have separate boards of directors and officers.  Smith Decl., at ¶ 6.  WMI and WM-MD maintain separate corporate minutes, books and records.  *Id*. at ¶ 9.  And lastly, there is no evidence that WM-MD does not have sufficient capital to operate independent of WMI.

In her opposition, Plaintiff fails to offer any evidence that WMI exercises complete domination over WM-MD such that this Court should treat them as a single entity. *See* Pl. Opp., at *passim*. There is no evidence of fund or asset commingling or of WM-MD's undercapitalization. There is no evidence that WMI failed to keep separate books or hold separate shareholder meetings from WM-MD or exercised daily, supervisory control over WM-MD. Simply stated, Plaintiff does not allege a degree of overlap plausibly establishing a unity of the corporate entities. Thus, Plaintiff has failed to plausibly establish that WMI and WM-MD should be treated as one entity for purposes of Title VII.

## II.   PLAINTIFF HAS NOT ESTABLISHED THAT THE COURT HAS PERSONAL JURISDICTION OVER NON-RESIDENT WMI

Nothing in Plaintiff's opposition refutes the fact that this Court lacks personal jurisdiction over WMI. At the outset, there is no question that WMI is a publicly traded company incorporated under the laws of the State of Delaware with its principal place of business in Houston, Texas. Smith Decl., at ¶ 3. Moreover, Plaintiff has not disputed the following set of facts:

- WMI has no employees (in Maryland or elsewhere). *Id.*, at ¶ 5, 10;

- WMI is not qualified or licensed to do business in Maryland and does not maintain an agent for service of process in the State of Maryland. *Id.*, at ¶¶ 7, 8;

- WMI does not maintain an office, or have a telephone listing or mailing address in the State of Maryland. Id., at ¶ 9; and

- WMI has not consented to this Court's jurisdiction, and was not served with process in the State of Maryland.

*See* Dkt. No. 5.

Despite the competent evidence contained in the Smith Declaration, Plaintiff asks this Court to disregard it and instead rely on her mere belief, unsupported by facts, that the "leaders

of WMI have the requisite minimum contacts with Maryland to establish personal jurisdiction." Pl. Opp., at p. 1. According to Plaintiff, Jay Roman's involvement in the promotional decision "provides evidence of sufficient 'minimum contact' with the forum state such that requiring it to defend itself within the forum state 'does not offend traditional notions of fair play and substantial justice.'" *Id*. (internal citations omitted). But, as addressed above, Jay Romans was not an employee of WMI; rather, he was employed by Waste Management Corporate Services, Inc. *See* Kviklys, Decl., at ¶ 6. As for the other employees whom Plaintiff contends were "directly or indirectly involved in [her] employment decisions," there is no evidence that any of them were employed by WMI. Thus, there can be no dispute – on these facts – that WMI did anything to avail itself of the benefits of Maryland's laws and, therefore, there is no basis to subject it to specific or general jurisdiction in Maryland.

### III.  THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR LEAVE TO AMEND THE COMPLAINT DUE TO HER NON-COMPLIANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE AND THIS COURT'S LOCAL RULES

Plaintiff has informally requested leave to amend her Complaint – not by motion but in the body of her opposition papers. *See* Pl. Opp, at p. 2. Specifically, in a single sentence in her opposition papers, Plaintiff requests in the alternative that she be permitted leave to file an amended complaint pleading "more detailed factual allegation as to the responsibility of Waste Management of Maryland's debts and liabilities." *Id*. According to Plaintiff, she "would like to request and obtain the doctrine of successor liability." *Id*. To the extent Plaintiff intends this request to be a motion for leave to amend, it fails to comply with the Federal Rules of Civil Procedure, as well as the District's Local Rules. *See* FED. R. CIV. P. 7(b) ("a request for a court order must be made by motion"); Local Rule 103.6 (imposing very specific requirements on plaintiffs who seek leave to amend, *viz.*, (1) attaching the original of the proposed amended

9.

pleading to the motion; and (2) filing a clean copy of the amended pleading and a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type). Plaintiff's flagrant disregard of the Court's rules provides an independent basis to deny her leave to amend. *See*, *e.g.*, *Coulibaly v. J.P. Morgan Chase Bank, N.A.*, 2011 U.S. Dist. LEXIS 87495, at *70-72 (D. Md. Aug. 8, 2011), where the court denied the *pro se* plaintiff's motion for leave to amend due to non-compliance with the requirements of the Local Rules, and observed as follows:

> Compliance with the Local Rules is not optional. The Rules pertaining to amendments, for instance, help ensure that the court has available all the information it needs to determine whether leave can be appropriately granted. And, of course, local rules have the force of law. As such, even pro se litigants must follow them. The Court can neither act as counsel for a pro se litigant nor excuse a pro se litigant's failure to comply with the Federal Rules of Civil Procedure, the Local Rules, or the orders of this Court due to ignorance of the law.

*Id*. at *71-72 (internal quotations and citations omitted); *see also Bock v. Florists' Transworld Delivery, Inc.,* 2013 U.S. Dist. LEXIS 132136, at *24 (D. Md. Sept. 16, 2013) ("'[W]here ... the plaintiff fails to formally move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court does not abuse its discretion' in declining to grant a motion to amend the complaint.") (quoting *Estrella v. Wells Fargo Bank, N.A.*, 2012 U.S. App. LEXIS 24719, at *2 (4th Cir. Nov. 29, 2012)).

Even had Plaintiff properly moved for leave to amend the Complaint or, the Court independently considers granting Plaintiff leave to amend, such leave should not be granted because any attempt to replead would be futile. Indeed, while Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so

10.

requires," FED. R. CIV. P. 15(a)(2), unless "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). An amendment is futile if it would fail to withstand a motion to dismiss. *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Here, there is no point in granting Plaintiff the opportunity to amend because WMI has already sufficiently established that it does not control WM-MD's employment decisions or dominate WM-MD such that the two corporations are the same entity. Moreover, the doctrine of successor liability is wholly inapplicable to this case, especially where there has been no allegation that WMI acquired WM-MD.[3] Thus, granting Plaintiff leave to amend would be futile.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in WMI's moving papers, WMI respectfully requests that the Court (1) grant its motion and dismiss the Complaint in its entirety with prejudice; and (2) deny Plaintiff's request for leave to amend the Complaint.

---

[3] The rule of successor liability provides that "a corporation which acquires all or part of the assets of another corporation does not acquire the liabilities and debts of the predecessor, unless (1) there is an express or implied agreement to assume the liabilities; (2) the transaction amounts to a consolidation or merger; (3) the successor entity is a mere continuation or reincarnation of the predecessor entity; or (4) the transaction was fraudulent, not made in good faith, or made without sufficient consideration." *Charter Oak Fire Ins. Co. v. Marlow Liquors*, 2010 U.S. Dist. LEXIS 53915, at *10-11 (D. Md. June 1, 2010).

12.

                /s/ *Alison N. Davis*
                Alison N. Davis (Fed. Bar No. 27987)
                andavis@littler.com
                Ethan D. Balsam (Fed. Bar No. 18761)
                ebalsam@littler.com
                LITTLER MENDELSON, P.C.
                1150 17th Street N.W., Suite 900
                Washington, DC  20036
                Tel: 202.772.2533
                Fax: 866.724.3975

                *Counsel for Defendant*
                *Waste Management, Inc.*

January 8, 2014