IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JANISHA P. PRICE,

*Plaintiff*,

v.

WASTE MANAGEMENT, INC.,

*Defendant*.

Civil Action No. ELH-13-02535

**MEMORANDUM OPINION**

Janisha Price, the self-represented plaintiff, filed suit against Waste Management, Inc. ("WMI"), defendant, under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff alleges discrimination based on race and color as well as retaliation (ECF 1, "Complaint" or "Compl.").[1] Pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure, WMI filed a motion to dismiss (ECF 7), supported by a memorandum (ECF 7-1) (collectively, the "Motion"), seeking dismissal of the Complaint based on lack of both subject matter jurisdiction and personal jurisdiction. Plaintiff opposed the Motion (ECF 10, "Opposition") and, in the alternative, has requested leave to amend. *See* ECF 10 at 2. Defendant replied (ECF 16, "Reply").

The issues have been fully briefed, and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I will grant defendant's Motion, but will also grant leave to amend.

---

[1] Because plaintiff is proceeding without counsel, her filings have been "'liberally construed'" and are "'held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citation omitted).

**Factual Background**

Plaintiff alleges that in September 2008, she "was hired by Waste Management" as a human resources professional. Compl. at ¶ 6. Price recounts that she "was involved in a series of investigations" of an employee named Kami Moody in March 2010, in which Price raised concerns about discrimination and retaliation. *Id.* Plaintiff avers that she was approached by a manager[2] in April 2010 "about repairing [her] relationship with the individuals involved in discriminatory and retaliative [sic] behavior." *Id.* From April to September 2010, a manager discussed plaintiff's performance with her several times. *Id.* Plaintiff asserts that, prior to voicing her concerns about discrimination and retaliation, no one questioned her performance and she was never "written up or placed on a performance improvement plan," nor was she given "a poor performance review." *Id.* According to plaintiff, on September 23, 2010, she "was terminated for performance within approximately six months of raising concerns about discrimination and retaliation." *Id.* at ¶ 4, 6.

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2010, *id.* at ¶ 9, and the EEOC issued a right-to-sue letter to Price, dated June 5, 2013. ECF 1-1; *see* Compl. at ¶ 10. On August 30, 2013, plaintiff filed suit against WMI, alleging unlawful termination based on race and color, and retaliation based on participation in a protected activity. *Id.* at ¶¶ 4-5. Plaintiff seeks back pay, reinstatement to her former position, monetary damages in the amount of $2,500, and a "3-year employment contract training HR professionals on [T]itle VII." *Id.*, ECF 1 at 3-4.

---

[2] Plaintiff did not identify the names of the managers referred to in her Complaint.

As noted, WMI moved to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), and for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).  It asserts that Price was an employee of Waste Management of Maryland, Inc. ("WM-MD"), one of its subsidiaries, and not an employee of WMI.  According to WMI, it lacks the requisite minimum contacts with Maryland to establish personal jurisdiction, and cannot be considered an employer under Title VII for the purpose of subject matter jurisdiction.  ECF 7-1 at 1-2.

In support of its Motion, WMI has offered the Declaration of Linda Smith ("Smith Decl.," ECF 7-2), the Corporate Secretary of WMI, in which she avers that WMI is a publicly traded company incorporated under the laws of the State of Delaware, with its principal place of business in Houston, Texas.  *Id.* at ¶ 3.  Smith explains that WMI is a holding company and is an indirect shareholder and "ultimate parent company" of WM-MD, a subsidiary incorporated under the laws of Maryland.  *Id.* at ¶ 4.  Smith also asserts that WMI does not conduct, transact, or solicit business in Maryland.  *Id.* at ¶ 7.  Further, Smith avers that WMI is not qualified or licensed to do business in Maryland; it does not maintain an agent in Maryland for service of process; and it does not maintain an office, a telephone listing, or a mailing address in Maryland. *Id.* at ¶¶ 7-8.  Smith also states that "WMI does not have employees in Maryland," *id.* at ¶ 9, and that "WMI has no employees."  *Id.* at ¶ 10.  According to Smith, WM-MD employs its own personnel to conduct business in Maryland, *id*. at ¶ 5, and WMI has no involvement in the hiring, firing, or suspension of WM-MD employees, or in "supervising of day-to-day work activities of WM-MD employees . . . ."  *Id.* at ¶ 10.  Nor does WMI "control or administer" any "terms or conditions of WM-MD employees" or "enforce WM-MD's employment policies . . . ."  *Id*.

Smith maintains that "WM-MD is a separate and distinct corporate entity from WMI," *id*. ¶ 6, with its own officers, directors, books, and records. *Id*.

WMI also submitted the Declaration of Robert Kviklys ("Kviklys Decl.," ECF 16-1), the "Vice President Human Resources Operations for WM Corporate Services, Inc." *Id*. at 1. He states, *inter alia*, that (1) "Janisha Price was an employee of Waste Management of Maryland"; (2) "No representative of Waste Management, Inc. ('WMI') made employment decisions regarding Ms. Price"; and (3) "WMI had and continues to have no involvement with respect to [] employment decisions affecting WM-MD employees, nor has WMI been involved in the establishment of workplace policies at WM-MD." *See* Kviklys Decl. at ¶¶ 3–5. Kviklys appended as an exhibit to his Declaration the letter of August 21, 2008, offering plaintiff "the position of Sr. Human Resources Manager with Waste Management of Maryland." *See* Ex. A, ECF 16-1.[3]  Plaintiff signed the letter on March 25, 2008, under the words "AGREED and ACCEPTED." *Id.*

In her Opposition, plaintiff asserts that this Court has "general jurisdiction over WMI." ECF 10 at 1.   According to plaintiff, "the company website, which displays the Waste Management, Inc. emblem . . . recognizes and lists the Senior VP of Human Resources among its 'Leaders.'"  Plaintiff contends that the position of "Senior VP of Human Resources" involves "company standards" for "all Waste Management subsidiary human resources departments," including WM-MD. *Id.*  In addition, she claims that WMI had "direct involvement" in her "employment decisions." *Id.*  She insists that, as the parent company, WMI is liable based on respondeat superior. *Id.* at 2.  In support of her Opposition, plaintiff provided a webpage listing

---

[3] The copy of the letter does not contain a company letterhead.

"Leadership" at WMI (Ex. A, ECF 10-1); a web page containing a "Legal Notice" from WMI disclaiming liability for links to external websites (Ex. B, ECF 10-2); and email exchanges between her and Chris Drier, an individual identified in the emails as "MA Vice President" (Ex. C, ECF 10-3; Ex. D, ECF 10-4).

## Standards of Review

### A.  Fed. R. Civ. P. 12(b)(1)

"It is well established that before a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). Fed. R. Civ. P. 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. *See Khoury v. Meserve*, 628 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  "[A] motion to dismiss under Rule 12(b)(1) is nonwaivable and may be brought at any time-even on appeal-regardless of whether a litigant raised the issue in an initial pleading." *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 548 (4th Cir. 2006); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

A test of subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts, outside the four corners of the complaint, preclude the exercise of subject matter jurisdiction.  *Kerns v. United*

*States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *see also Buchanan v. Consol. Stores Corp.*, 125 F. Supp. 2d 730, 736 (D. Md. 2001).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In a factual challenge, on the other hand, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Evans*, 166 F.3d at 647. That is, "the court may look beyond the pleadings and 'the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Khoury*, 268 F. Supp. 2d at 606 (citation omitted).

**B. Fed. R. Civ. P. 12(b)(2)**

A motion to dismiss for lack of personal jurisdiction arises under Fed. R. Civ. P. 12(b)(2). "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir. 1989). Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2). *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351, at 274–313 (3d ed. 2004, 2012 Supp.). Rather, the district court may address the question of personal jurisdiction as a preliminary matter, ruling solely on the

basis of motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint. *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009). In that circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.*

"In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003). Notably, "district courts are not required to look solely to the plaintiff's proof in drawing those inferences." *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993). However, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).[4]

### Discussion

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Title VII prohibits an employer from, *inter alia*, discharging or discriminating against "any individual with respect to his compensation terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). For the purposes of Title VII, an "employer" is "a person engaged in an industry

---

[4] Alternatively, the court may, in its discretion, permit limited discovery as to the jurisdictional issue. *See Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). Then, "the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. In this case, no party has requested discovery as to jurisdiction.

affecting commerce who has *fifteen or more employees* for each working day in each of twenty

or more calendar weeks in the current or preceding calendar year . . . ." *Id.* § 2000e(b) (emphasis

added). Further, an employment relationship must exist between plaintiff and defendant. *See*

*Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 980 (4th Cir. 1987).

      Defendant insists that this Court lacks subject matter jurisdiction over plaintiff's Title VII

claims because (1) it does not employ fifteen or more employees and, as a result, is not covered

by Title VII; and (2) Waste Management of Maryland ("WM-MD"), its subsidiary, was

plaintiff's employer, not WMI. *See* ECF 7-1 at 8-10; ECF 16 at 5-8.

      WMI has misconstrued the question of WMI's status as an employer for the purposes of

Title VII liability as a jurisdictional one. In *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006), the

Supreme Court considered the very question of whether Title VII's employee-numerosity

requirement restricts a federal court's subject matter jurisdiction. Recognizing that courts often

struggled with the question of whether a statutory provision was jurisdictional or an element of

plaintiff's claim for relief, *see id.* at 504-511, the Supreme Court articulated a "readily

administrable bright line":

> If the Legislature clearly states that a threshold limitation on a statute's scope
> shall count as jurisdictional, then courts and litigants will be duly instructed and
> will not be left to wrestle with the issue. But when Congress does not rank a
> statutory limitation on coverage as jurisdictional, courts should treat the
> restriction as nonjurisdictional in character.

*Id.* at 515-16 (internal citations omitted and footnote omitted).

      The Supreme Court concluded that the "threshold number of employees for application of

Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id.* at 516. In

so finding, the Court observed that "the 15–employee threshold appears in a separate provision"

from Title VII's jurisdictional provision, 42 U.S.C. § 2000e–5(f)(3), which "'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 515 (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 394 (1982)).  Thus, contrary to defendant's assertion, Title VII's employee-numerosity requirement is not a limitation on subject matter jurisdiction, but rather a requirement relating to the substantive adequacy of a plaintiff's Title VII claim. *See id.* at 504. *See also Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012) (recognizing that the Fourth Circuit had previously treated the numerosity requirements of the employment discrimination statutes as jurisdictional, and that this approach did not survive *Arbaugh*).

Similarly, the existence of an employment relationship between plaintiff and defendant is not a limitation on subject matter jurisdiction.  Title VII does not "clearly state[]" that an employee-employer relationship is a jurisdictional limitation.  Rather, the existence of an employment relationship between plaintiff and defendant is an element of plaintiff's claim for relief. *See Xie v. Univ. of Utah*, 243 F. App'x 367, 371-72 (10th Cir. 2007) (finding that, in light of *Arbaugh*, plaintiff's status as defendant's employee was an element of her Title VII claim, rather than a threshold jurisdictional requirement); *Kaiser v. Trofholz Technologies, Inc.*, 935 F. Supp. 2d 1286, 1292 (M.D. Ala. 2013) (applying *Arbaugh* to find that defendant's status as plaintiff's employer was a nonjurisdictional element of her substantive cause of action under Title VII).

Accordingly, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is not the proper mechanism for presenting either of defendant's defenses as to WMI's status as an

employer.   Therefore, I will deny defendant's motion to dismiss for lack of subject matter jurisdiction.[5]

### B.  Motion to Dismiss for Lack of Personal Jurisdiction

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure authorizes a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state where the district court is located.   *Carefirst*, *supra*, 334 F.3d at 396.   Therefore, "to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."   *Id.*

Maryland's long-arm statute is codified at Md. Code (2006 Repl. Vol., 2009 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article.   It authorizes "personal jurisdiction over a person, who directly or by an agent":

> (1) Transacts any business or performs any character of work or service in the State;

---

[5] In support of its position that subject matter jurisdiction is lacking, defendant relies heavily on *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978 (4th Cir. 1987) and *Hager v. First Virginia Banks, Inc.*, No. 7:01-CV-00053, 2002 WL 57249 (W.D. Va. Jan. 10, 2002). In *Johnson*, 814 F.2d 978, the Fourth Circuit explained that "the parent company can be the employer of a subsidiary's workers if it exercises excessive control in one of two ways": (1) "the parent could control the employment practices and decisions of the subsidiary;" or (2) "the parent might so dominate the subsidiary's operations that the parent and the subsidiary are one entity and thus one employer." *Id.* at 981.   Using this test, the Court found that plaintiffs failed to make out a *prima facie* case of employment discrimination under Title VII because they could not establish that the parent company was the employer. *See id.* at 981-82. In *Hager*, 2002 WL 57249, the court applied *Johnson* to find that the parent company was not plaintiff's "employer" for the purposes of the ADA, and that the court therefore did not possess subject matter jurisdiction over the parent company.  *Id.* at *5. However, in view of *Arbaugh*, these cases are not applicable to the question of subject matter jurisdiction.

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5) Has an interest in, uses, or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*Id.*

Maryland's courts have "consistently held that the purview of [Maryland's] long arm statute is coextensive with the limits of personal jurisdiction set by the due process clause of the Federal Constitution." *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 388 Md. 1, 15, 878 A.2d 567, 576 (2005) (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551, 553 (1977)). "Because the limits of Maryland's statutory authorization for the exercise of personal jurisdiction are coterminous with the limits of the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996); *accord ALS Scan, Inc. v. Digital Service Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002). Thus, the constitutional due process inquiry is paramount.

The United States Supreme Court has long held that personal jurisdiction over a nonresident defendant is constitutionally permissible so long as the defendant has "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Due process jurisprudence recognizes "two types of personal jurisdiction:

general and specific." *CFA Institute v. Institute of Chartered Financial Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). The difference between the two turns on the amount and nature of the contacts with the forum state that are necessary to meet the "minimum contacts" threshold. The Fourth Circuit has explained:

> General personal jurisdiction, on the one hand, requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred. Specific personal jurisdiction, on the other hand, requires only that the relevant conduct have such a connection with the forum state that it is fair for the defendant to defend itself in that state.

*Id.* (citing, *inter alia, Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)) (internal citations omitted); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011) (explaining that a court may exercise general jurisdiction to hear "any and all claims" against a corporation "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," whereas specific jurisdiction "depends on an 'affiliatio[n] between the forum and the underlying controversy'" (citations omitted) (alteration in original)).

To determine whether the due process requirements for asserting specific jurisdiction have been met, a court considers: "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (citing *ALS Scan*, 293 F.3d at 715); *see also Carefirst*, 334 F.3d at 397. "The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the

laws of the forum state." *Consulting Engineers*, 561 F.3d at 278.  "Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (internal citations omitted); *see also ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 392 (4th Cir. 2012).  To satisfy the second prong of the test for specific jurisdiction, the defendant's contacts with the forum state must form the basis of the suit.  *Consulting Engineers*, 561 F.3d at 278-79.  The constitutional reasonableness inquiry permits a defendant "who purposefully has directed his activities at forum residents" to defeat jurisdiction, if he can "present a compelling case that the presence of some other considerations would render jurisdiction unconstitutional." *Burger King*, 471 U.S. at 477.  "This prong of the analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012) (citing *CFA Inst.*, 551 F.3d at 296) (internal quotation marks omitted), *cert. denied*, ____ U.S. ____, 133 S. Ct. 846 (2013).

In contrast, "the threshold level of minimum contacts sufficient to confer general jurisdiction is significantly higher than for specific jurisdiction." *ALS Scan*, 293 F.3d at 715 (internal quotation marks omitted); *accord Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).  The Supreme Court recently explained that "the inquiry . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*,

____ U.S. ____, 134 S. Ct. 746, 761 (2014) (some internal quotation marks omitted; second alteration in original). "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.' With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id.* (quoting *Goodyear Dunlop*, 131 S. Ct. at 2853-54) (internal citation omitted) (alterations in original); *see also Estate of Bank v. Swiss Valley Farms Co*., 286 F. Supp. 2d 514, 517-18 (D. Md. 2003) ("[G]eneral jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state." (quoting *Atlantech Distribution, Inc. v. Credit Gen. Ins. Co.*, 30 F. Supp. 2d 534, 536 (D. Md. 1998)). Thus, "broad constructions of general jurisdiction" are "generally disfavored." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993).

Defendant contends that this Court lacks both general and specific personal jurisdiction over it. As to general personal jurisdiction, defendant maintains that "WMI has absolutely no contact with Maryland." ECF 7-1 at 8. Defendant also argues that plaintiff cannot establish specific jurisdiction over WMI because "she has not alleged that WMI did anything to purposefully avail itself of the benefits of doing business in the State of Maryland." *Id.* at 7.

Plaintiff counters that this Court has general personal jurisdiction over defendant because "the leaders of WMI have the requisite minimum contact with Maryland to establish personal jurisdiction." ECF 10 at 1. Price concedes that "WMI may not have 'employees,'" but asserts that the Senior Vice President of Human Resources, who is identified as a "Leader" on the WMI website, "sets forth company standards, vision, policies and practices, including hiring and firing

decisions, performance standards, and discipline policies, for all Waste Management subsidiary human resources departments, including [WM-MD]." *Id.* (citing Ex. A; 10-1; Ex. B, 10-2). According to plaintiff, Jay Romans, the former Senior Vice President of Human Resources for WMI, was involved in determining whether she would be promoted to "VP of Human Resources, Eastern Group Role." *Id.* (citing Ex. C, ECF 10-3; Ex. D, ECF 10-4).  In plaintiff's view, this "direct involvement" on the part of Romans "provides sufficient 'minimum contact' with the forum state." *Id.*  Plaintiff also asserts that "doing business in the state of Maryland includes developing and enforcing employment related policies and practices" and that "WMI Leaders, who are prominently marketed as representatives of WMI on the company website are accountable for the decisions they make for Waste Management Subsidiaries, including affiliates in the state of Maryland." *Id.*

In addition, plaintiff attempts to establish the existence of an agency relationship between WMI and WM-MD, so as to establish personal jurisdiction over WM-MD.  ECF 10 at 2. Plaintiff maintains that defendant is a "responsible party" because WMI, as the parent company, "assumes the liability for those working on its behalf" and "has responsibility for the torts and liabilities of its representatives when there has been sufficient minimum contact established with a subsidiary." *Id.*  To that end, plaintiff contends that Jay Romans, Chris Drier, Leo Little, and Sanita Pinchback[6] were directly and indirectly involved in decisions affecting her employment and that they "were aware and/or apart [sic] of" discrimination and retaliation against her.  *Id.*

---

[6] It is not apparent, based on the record, what position Leo Little held. According to the Declaration of Kviklys, Pinchback held the position of the Group Vice President, Human Resources, and was an employee of Waste Management of Pennsylvania. *Id.* at 3.

Plaintiff has not met her burden of demonstrating that this Court may exercise personal jurisdiction over WMI. As discussed, WMI has shown that it does not conduct, transact, or solicit business in Maryland. Smith Decl. at ¶ 7. Moreover, WMI is not qualified or licensed to do business in Maryland; has no employees in Maryland; does not maintain an agent for service of process in the state of Maryland; and does not maintain an office, a telephone listing, or a mailing address in Maryland. *Id.* at ¶¶ 7-8. Indeed, plaintiff has not set forth any allegations that would permit the conclusion that WMI's contacts were so "continuous and systematic" as to render WMI essentially at home in Maryland. Nor has plaintiff established that WMI purposefully availed itself of doing business in Maryland, or that plaintiff's cause of action arose from WMI's contacts with Maryland, so as to support the exercise of specific jurisdiction.

Even if Romans were "directly involved" in the decision as to whether plaintiff should be promoted, as plaintiff contends, this would not establish that this Court possesses specific jurisdiction for the purposes of this action, which concerns an unrelated personnel decision. *See Glynn v. EDO Corp.*, 536 F. Supp. 2d 595, 605 (D. Md. 2008) (finding that the court lacked jurisdiction where defendants' "limited contacts with Maryland" were "unrelated to the event underlying [the] litigation"). Likewise, Romans's decision regarding plaintiff's promotion does not meet the high standard for general personal jurisdiction, especially where there is no indication that the decision as to plaintiff's promotion has any nexus with Maryland. *Cf. Ratliff v. Cooper Labs., Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("Significant in the instant factual setting is the lack of a 'rational nexus' between the forum state and the relevant facts surrounding the claims presented."). Notably, defendant maintains that Romans was not employed by WMI;

rather, he was employed by Waste Management Corporate Services, Inc., a wholly owned subsidiary of WMI.  Kviklys Decl. at ¶ 6.

Plaintiff appears to argue that the Court should find jurisdiction over WMI based on the actions of its subsidiary, WM-MD, pursuant to the doctrine of respondeat superior.  It is well settled that "[a] corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988); *see United States v. Bestfoods,* 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." (citation omitted)).  Thus, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi*, 427 F.3d at 276.

However, the Fourth Circuit has observed: "'[F]ederal courts have consistently acknowledged that it is compatible with due process for a court to exercise personal jurisdiction over an individual . . . that would not ordinarily be subject to personal jurisdiction in that court when the individual . . . is an alter ego . . . of a corporation that would be subject to personal jurisdiction in that court.'" *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 433 (4th Cir. 2011) (quoting *Patin v. Thoroughbred Power Boats Inc.,* 294 F.3d 640, 653 n.18 (5th Cir. 2002) (alterations in original); *see Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) ("Normally, courts apply the alter-ego theory of personal jurisdiction to parent-subsidiary relationships.").  So, "[t]o assert jurisdiction over a parent company based on the conduct of a subsidiary, the court must find circumstances warranting it to pierce the corporate veil." *Newman v. Motorola, Inc.*, 125 F.

Supp. 2d 717, 722-23 (D. Md. 2000).   The law of the forum state determines whether the corporate veil should be pierced to exercise personal jurisdiction over a non-resident defendant. *Burns & Russell Co. of Baltimore v. Oldcastle, Inc.*, 198 F. Supp. 2d 687, 697 (D. Md. 2002).

Under the "integrated employer" doctrine, a parent and its subsidiary can be considered a single employer for the purposes of liability under civil rights statutes.   *See Hukill v. Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999).   Although there are various formulations of the test for joint employer or integrated employer status, the formulations all are directed at "analyzing the amount of control the alleged joint employer had over employees."   *Moldenhauer v. Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008) (emphasis omitted); *see also, e.g.*, *Lyes v. City of Riviera Beach,* 166 F.3d 1332, 1341 (11th Cir. 1999) ("[W]here . . . one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as 'joint employers' and aggregate them.").

In a Title VII suit, Judge Quarles of this Court declined to adopt the integrated employer test for the purposes of establishing personal jurisdiction over a parent company based on its relationship to a subsidiary.   *See E.E.O.C. v. AMX Commc'ns, Ltd.*, No. WDQ-09-2483, 2011 WL 3555831, at *6 (D. Md. Aug. 8, 2011).   In rejecting the application of the integrated employer test for the purposes of establishing personal jurisdiction, Judge Quarles explained:

> "[J]urisdiction and liability are . . . separate inquiries." *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000).   "[T]hat a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised." *Id*.   If a defendant does not have sufficient minimum contacts with the forum, the personal jurisdiction analysis ends "without examining the plaintiff's causes of action." *Id.* at 944-45.   The laws on which the suit are based are irrelevant to the jurisdictional inquiry "because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis

- 18 -

for personal jurisdiction by making these contacts elements of a cause of action." *Id.* at 945. That "would violate due process." *Id.*

*Id.* (alterations in original). *See also E.E.O.C. v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 525-26 (S.D. Tex. 2012) ("The integrated enterprise theory . . . is a liability standard . . . not a jurisdictional standard."); *Walker v. THI of New Mexico at Hobbs Ctr.*, 801 F. Supp. 2d 1128, 1153-54 (D.N.M. 2011) (declining to employ a single employer theory to determine whether the court possessed personal jurisdiction, and observing that "[t]he single integrated-enterprise theory derives from federal law regarding Title VII, a different body of law than law regarding minimum contacts"); *Tese–Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not encountered, and Plaintiff does not offer any legal support for the concept that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law."). *But see Procaccino-Hague v. Boll Filter Corp.*, No. 303-cv-1560(GLG), 2004 WL 78155, at *3 (D. Conn. Jan. 13, 2004) (finding personal jurisdiction based on the integrated enterprise theory).

Rather, Judge Quarles employed the "agency test" to determine whether to impute the jurisdictional contacts of the subsidiary to the parent defendant. *See AMX Commc'ns*, 2011 WL 3555831, at *7. As the Fourth Circuit explained in *Mylan*, *supra*, 2 F.3d at 61, the "Maryland Court of Appeals . . . has adopted the so-called 'agency' test in deciding whether to pierce the veil separating parent corporations from their subsidiaries for jurisdictional purposes." *Id.* Under the agency test, the court may attribute the subsidiary's actions to the parent "if the parent exerts considerable control over the activities of the subsidiary." *Id.* The central inquiry is "whether significant decisions of the subsidiary must be approved by the parent." *Id.*

In analyzing the issues, the court examines factors such as "whether the parent and subsidiary maintain separate books and records, employ separate accounting procedures, and hold separate directors' meetings." *Id.* In addition, the court considers "the level of interdependence between parent and subsidiary . . . the subsidiary '[must] have some independent reason for its existence, other than being under the complete domination and control of another legal entity simply for the purpose of doing its act and bidding.'" *Id.* (quoting *Harris v. Arlen Properties, Inc.,* 256 Md. 185, 200, 260 A.2d 22, 29 (1969)). "Finally, the court must find that [the parent] knew, or should have known, that its conduct would have some impact in Maryland." *Mylan*, 2 F.3d at 61-62. Notably, "Maryland generally is more restrictive than other jurisdictions in allowing a plaintiff to pierce the corporate veil." *Harte-Hanks Direct Mktg./Baltimore, Inc. v. Varilease Tech. Fin. Grp., Inc*., 299 F. Supp. 2d 505, 514 (D. Md. 2004) (citing *Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.*, 126 Md. App. 294, 728 A.2d 783, 790-91 (1999)).

In her Declaration, Smith said: "WM-MD is a separate and distinct corporate entity from WMI." Smith Decl. at ¶ 6. As noted, Smith avers that "WM-MD has its own officers and directors" and "maintains books and records that are separate from those of WMI." *Id.* Nothing in the record undermines these assertions, or otherwise subverts the legitimacy of WMI's corporate structure. *Cf. Mylan*, 2 F.3d at 63 (affirming the district court's decision that it lacked personal jurisdiction over a parent company where the parent and subsidiary "observed all corporate formalities" and plaintiff "offered no persuasive evidence . . . to counter [the parent company's] representation that [the subsidiary] is an autonomous corporation whose operations, management, and finances are entirely independent of [the parent company]").

Moreover, plaintiff's conclusory assertions as to the involvement of Romans, Drier, Little, and Pinchback in employment decisions affecting her does not indicate that WMI "exerts considerable control over the activities" of WM-MD.  *See Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998) (explaining that "conclusory non-fact-specific jurisdictional allegations" are insufficient "to establish a prima facie case of jurisdiction."); *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988) ("It is settled a plaintiff must allege specific acts connecting [the] defendant with the forum, and that the bare allegation of conspiracy or agency is insufficient to establish personal jurisdiction." (internal quotation marks omitted) (alteration in original)).

To support the exercise of personal jurisdiction over WMI, plaintiff cites a logo purportedly shared by WMI and WM-MD, images of which she includes in her brief.  It contains two large letters, "WM," and underneath it says, "WASTE MANAGEMENT."  *See* ECF 10 at 2; ECF 10-2 at 1.  Price asserts: "There is no distinction to the public via signage or policy between Waste Management of Maryland and Waste Management, Inc."  *Id.*  This, too, is insufficient to establish that WMI has considerable control over the actions of WM-MD.  *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1460 (2d Cir. 1995) (finding that use of the same logo was "not evidence that the two companies operated as a 'single economic entity'"); *DeLia v. Verizon Communications, Inc.*, 258 F.R.D. 189, 192 (D. Mass. 2009) (holding that presence of parent's logo on paychecks issued to subsidiary's employees and application of parent's code of conduct to subsidiaries was insufficient to pierce corporate veil as matter of law); *see also Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 26 (1st Cir. 2007) (explaining that "the mere use of a trademark or logo" by the subsidiary "does not suffice to demonstrate the existence of the requisite minimum

contacts" of the parent); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1301 (S.D. Cal. 2003) (common use of a trade name not a sufficient basis for establishing personal jurisdiction over a parent corporation).

Plaintiff has not alleged parental control over the actions of the subsidiary that would justify the exercise of personal jurisdiction over WMI.  Indeed, "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over the foreign parent."  *Debt Relief Network, Inc. v. Fewster*, 367 F. Supp. 2d 827, 830 (D. Md. 2005) (internal quotations marks and citation omitted).  *See Haley Paint Co. v. E.I. Dupont De Nemours & Co.*, 775 F. Supp. 2d 790, 800 (D. Md. 2011) (finding plaintiff's "broad allegations" as to control insufficient to justify piercing the corporate veil); *Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723 (D. Md. 2000) ("The fact that [the parent corporation] will control certain decisions and even must approve changes does not mean the two companies operate as one.").

Accordingly, plaintiff has not set forth a *prima facie* case for personal jurisdiction over WMI.  Therefore, I will grant WMI's motion to dismiss for lack of personal jurisdiction.

## C.  Leave to Amend

In the body of her Opposition, plaintiff requests, in the alternative, that she be granted leave to amend her complaint "in order to make a more detailed factual allegation as to the

responsibility of Waste Management of Maryland's debts and liabilities" and to "request and obtain the doctrine of successor liability."[7]   ECF 10 at 2.

Defendant opposes the request for leave to amend, seeking dismissal with prejudice. Defendant insists that the request should be denied because plaintiff failed to comply with Fed. R. Civ. P. 7(b) and Local Rule 103.6.   ECF 16 at 9; *see* Fed. R. Civ. P. 7(b) ("a request for a court order must be made by motion"); Local Rule 103.6 (setting forth procedures for a party seeking leave to amend, including (1) attaching the original of the proposed amended pleading to the motion; and (2) filing and serving  "a clean copy of the amended pleading" and "a copy of the amended pleading in which stricken material has been lined through or enclosed in brackets and new material has been underlined or set forth in bold-faced type").   Defendant also objects to amendment on the ground of futility.   In particular, defendant asserts that amendment would be futile because "WMI has already sufficiently established that it does not control WM-MD's employment decisions or dominate WM-MD such that the two corporations are the same entity," and because the doctrine of successor liability is inapplicable to the case.   ECF 16 at 11.

Under Fed. R. Civ. P. 15(a), if more than 21 days have passed since service of the motion to dismiss, a party may only amend if the opposing party provides written consent or with the court's leave.   Leave to amend should be freely given "when justice so requires."   *Id.*   However, denial of leave to amend is appropriate where "'the amendment would be prejudicial to the

---

[7] Under the rule of successor liability, "a corporation that acquires the assets of another corporation typically does not acquire its liabilities, unless '(1) the successor expressly or impliedly agrees to assume the liabilities of the predecessor; (2) the transaction may be considered a de facto merger; (3) the successor may be considered a 'mere continuation' of the predecessor; or (4) the transaction is fraudulent.'" *PCS Nitrogen Inc. v. Ashley II of Charleston LLC*, 714 F.3d 161, 173 (4th Cir. 2013) (quoting *United States v. Carolina Transformer Co.*, 978 F.2d 832, 837 (4th Cir. 1992)), *cert. denied*, ___U.S. ___,  134 S. Ct. 514 (2013).

opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *accord Balas v. Huntington Ingalls Industries, Inc.,* 711 F.3d 401, 409 (4th Cir. 2013); *Green v. Wells Fargo Bank, N.A.*, 927 F. Supp. 2d 244, 257 (D. Md. 2013).  For a motion to amend to be denied based on futility, the amendment must be "clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510-11. Amendment of the Complaint would not necessarily be futile.

To be sure, and as WMI points out, plaintiff did not file a separate motion for leave to amend, and she also failed to attach a proposed red-lined amended complaint, in violation of Local Rule 103.6 and Fed. R. Civ. P. 7(b).  Defendant asserts: "Plaintiff's flagrant disregard of the Court's rules provides an independent basis to deny her leave to amend." ECF 16 at 10.  But, these derelictions are not fatal to plaintiff's request for leave to amend, especially in light of plaintiff's status as a self-represented litigant. *See Milligan v. Brady*, No. RWT-10-2107, 2011 WL 1833346, at *1 n.1 (D. Md. May 13, 2011) ("As a *pro se* litigant, [plaintiff's] failure to comply with Local Rule 103.6 is not fatal to her request for leave to amend, and the Court concludes that her filing contains sufficient information to consider her request without additional briefing."); *see also Lee v. Queen Anne's Cnty. Office of Sheriff*, No. RDB-13-672, 2014 WL 476233, at *4 (D. Md. Feb. 5, 2014) (noting that "this Court has not required strict compliance with the red-line copy requirement of Local Rule 103.6(c)").

Significantly, defendant does not contend that it would be prejudiced by plaintiff's non-compliance with Local Rule 103.6 and Fed. R. Civ. P. 7(b).  *See Chambers v. Choice Hotels Int'l, Inc.*, No. DKC-11-0404, 2011 WL 2457645, at *2 (D. Md. June 15, 2011) (granting leave

to amend although plaintiff "failed to include a copy of the amended complaint and a copy of the amended complaint with the proposed changes indicated," because defendant was not "materially prejudiced" by plaintiff's non-compliance with Local Rule 103.6); *Awah v. Board of Educ. of Baltimore Co.,* No. WMN–09–1044, 2010 WL 1929908, at *2 (D. Md. May 11, 2010) (refusing to deny a self-represented plaintiff's motion to amend where plaintiff filed a clean copy of his amended pleading, but failed to file a copy demonstrating the changes to the complaint, and there was no prejudice to defendant).  Under these circumstances, it is appropriate to allow an opportunity to amend the Complaint.

## Conclusion

For the foregoing reasons, defendant's Motion is granted; plaintiff's claims against defendant are dismissed, without prejudice.  Plaintiff's request for leave to amend is also granted.  A separate Order follows, consistent with this Memorandum Opinion.


Date: April 30, 2014                              _____/s/_____
                                                   Ellen Lipton Hollander
                                                   United States District Judge